UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN GAMBLE,

                              Plaintiff,

    vs.                                                    9:06-CV-1182
                                                                      (GTS/GJD)
T. ALLEN, Prison Guard,

                              Defendant.
_____

KEVIN GAMBLE
Plaintiff pro se

DEAN J. HIGGINS, Asst. Attorney General
Attorney for Defendant

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

      In this civil rights complaint, plaintiff alleges that on August 28, 2006, while he was an inmate at the Clinton Correctional Facility (Clinton), he was assaulted by defendant Allen, while an unidentified officer watched the incident, in violation of plaintiff's constitutional right to be free from cruel and unusual punishment. (Dkt. No. 1). Plaintiff also alleges that after the assault, defendant Allen refused to obtain medical attention for plaintiff until the next day.[1] (Dkt. No. 1). Plaintiff seeks

---

[1] Although plaintiff apparently also takes issue with the medical care that he was ultimately afforded, he has not named the nurse who was responsible for that examination as a

substantial monetary relief. *Id.* at ¶ 9.

Presently before the court is defendant's motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 32). Plaintiff has not responded to the motion. For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## DISCUSSION

**1.    <u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. *See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted). However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048,

---

defendant. *See* Compl. at p.5(b)(discussing the nurse's examination on August 29, 2006).

1052 (S.D.N.Y. 1987)(citation omitted).

## 2. **Facts**

Plaintiff alleges that on August 28, 2006 at approximately 7:38 p.m., he was taking a shower, when defendant Allen approached plaintiff and "whisper[ed] something in [his] ear," that sounded like an order to wash off the soapy "control box." Compl. at p.4. Plaintiff states that when he came out of the shower, he threw some water on the control box, dried it off, and then got ready to go back to the yard. *Id.* Plaintiff claims that defendant Allen asked for plaintiff's identification card, and that defendant Allen and another officer began to escort plaintiff back to his housing unit. *Id.* at p.5.

Plaintiff claims that on the way back to the housing unit, defendant Allen physically attacked plaintiff on the back stairs behind the bathhouse while the other officer watched. *Id.* Plaintiff alleges that defendant Allen was punching and slapping plaintiff in the face, while asking plaintiff if he liked "white people." *Id.* at p.5(a) (Second Facts).[2] Plaintiff states that defendant asked the question twice, and then got ready to swing his fist to strike plaintiff, when plaintiff responded "no specially [sic] white people like you." *Id.*

Plaintiff states that defendant Allen then opened the door and escorted plaintiff

---

[2] Plaintiff's complaint is written on a form-complaint with handwritten pages attached in between the pages of the form. The handwritten pages are entitled "Second Facts" and "Third Facts." After these "fact" pages, plaintiff has attached twenty one handwritten unnumbered pages, consisting of letters and other complaints that plaintiff wrote regarding this incident. The last page of the complaint is the form-page 6 and contains plaintiff's prayer for relief. The court will cite to plaintiff's "Second" and "Third" facts as pages 5(a) and 5(b), while the twenty one hand written pages as plaintiff's exhibit.

to B-Block. *Id.* Plaintiff states that he asked defendant Allen how long he had been working for the Department of Correctional Services (DOCS). Plaintiff claims that defendant Allen grabbed plaintiff around the neck with Allen's right hand and began choking plaintiff "like [Allen] was crazy," then pushed plaintiff up against the wall, and kicked him in the groin. *Id.*

Plaintiff states that he was in so much pain after the kick, that defendant Allen had to go inside B-Block and call for other officers while the unidentified officer who had accompanied them from the bathhouse watched the plaintiff. Plaintiff states that defendant Allen returned with two sergeants and three or four other officers. One of the sergeants allegedly asked defendant Allen whether plaintiff had to be restrained, and defendant Allen answered in the affirmative. Plaintiff claims that he asked for medical attention, but both sergeants refused the request and simply escorted plaintiff back to his cell. *Id.*

Plaintiff states that on August 29, 2006, between 12:30 and 1:00 p.m., an officer came to plaintiff's cell to take him to the infirmary. Compl. at p.5(b)(Third Facts). Plaintiff claims that when he arrived at the infirmary, he was examined by a female nurse who came into the room after the officer took pictures of the plaintiff.[3] *Id.* Plaintiff claims that the nurse never asked plaintiff where he was hurt. Instead, she had plaintiff lift both arms, turn around, and show her both hands. *Id.* Plaintiff claims that the nurse then told the sergeant that there were no scars or injuries anywhere, and

---

[3] Copies of the pictures have been included as part of defendant's Exhibit 5, however, defense counsel has also submitted original photographs for the court's review.

4

she made plaintiff sign a form to that effect.  Plaintiff claims that the nurse "was cover[ing]" for the defendant, and that plaintiff was suffering pain in his groin. *Id.*

Defendant Allen has submitted a declaration in support of his motion for summary judgment. Allen Decl. (Dkt. No. 37-3).  Defendant Allen states that on August 28, 2006, at approximately 8:00 p.m., he was monitoring sixty-eight inmates taking showers in the bathhouse at Clinton. Allen Decl. ¶ 3.  Defendant Allen states that during this time, he observed plaintiff placing his soapy hands on the lock and latch to the shower control box. *Id.* ¶ 3.  Defendant Allen states that he told plaintiff to wash the soap off the lock when he was finished showering, but that plaintiff did not comply with this order. *Id.* ¶ 5.

Defendant Allen states that he stopped plaintiff to again give him an order to wash the lock, however, plaintiff started yelling and stating that he was not Allen's porter and would not wash anything. *Id.* ¶ 7.  Because plaintiff's actions were drawing the attention of the other inmates in the bathhouse and delaying them from leaving, defendant Allen told plaintiff to lower his voice and calm down. *Id.* ¶¶ 8-9.  Defendant Allen states that plaintiff told Allen that plaintiff did not have to listen to Allen. *Id.* ¶ 9.  At that point, other escort officers took two groups of inmates back to the yard, and defendant Allen told plaintiff he was going back to his cell. *Id.* ¶ 10.

Defendant Allen states that he and the bathhouse first-officer escorted plaintiff out to the B-Block corridor. *Id.* ¶ 11.  When they reached the door of B-Block, plaintiff started speaking in a loud voice, telling the officers that he was not going to lock-in. *Id.* ¶ 11.  Defendant Allen states that he gave plaintiff an order to place his

hands on the wall, but plaintiff did not comply. *Id.* ¶ 12.  Defendant Allen then placed mechanical restraints on plaintiff and notified Sergeant Grimshaw, the area supervisor. *Id.* ¶ 13.  Defendant Allen states when Sergeant Grimshaw arrived, they escorted plaintiff to his cell. *Id.* ¶ 14.

Defendant Allen states that once plaintiff was in his cell, the restraints were removed. *Id.* ¶ 15.  Defendant Allen states that plaintiff then told defendant Allen that if spitting on an officer were not a felony, plaintiff would spit in defendant Allen's face and would "kick [Allen's] ass" if the Sergeant were not there. *Id.*  Defendant Allen states that, at that point, he walked off the company without further incident. *Id.* ¶ 16.

Based on this incident, defendant Allen wrote a misbehavior report against plaintiff for harassment, failing to obey a direct order, and creating a disturbance. *Id.* ¶ 17 & Ex. 5 at pp.11, 13.[4]  The plaintiff was found guilty after a disciplinary hearing. *Id.* & Ex. 5 at pp.34-35.  Defendant Allen states that he did not assault plaintiff or use any force against him.  The day after the alleged assault, plaintiff was examined by Nurse Lynne Khan. Affidavit of Brian Lecuyer, Nurse Administrator at Clinton[5]

---

[4] Pages 11 and 12 of Exhibit 5 are copies of the first page of the misbehavior report, and pages 13 and 14 are copies of the second page of the report.  Thus, the full report is at pages 11 and 13.

[5] Nurse Administrator Lecuyer has submitted an affidavit regarding plaintiff's medical care because the nurses who examined plaintiff are no longer employed at Clinton, and Nurse Administrator Lecuyer is basing his affidavit on certified records maintained at DOCS. Lecuyer Aff. ¶ 8.  Plaintiff was examined by Nurse Khan on August 29, 2006 and by Nurse Heath Baker on September 22, 2006, after another alleged excessive force incident involving plaintiff. *Id.* ¶¶ 5-6.

(Lecuyer Aff.) ¶ 5 (Dkt. No. 32-6). The Ambulatory Health Record (AHR) and an inmate accident report indicate that plaintiff had no injuries, and that no treatment was necessary. *Id.* & Ex. 4 at 3, 24.

## 3.     **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore*, 2005 U.S. Dist. LEXIS 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)). As an affirmative defense, it is the defendant's burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at *12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including

deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103. In *Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). At the time that plaintiff's incident arose, an inmate had fourteen (14) days within which to file a complaint.[6] An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a)(Inmate's Responsibility).

There is also an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7

---

[6] The court would first point out that the regulations were re-numbered in 2006. The court will cite to the new regulation numbers. The original regulation number for the time to file grievances was section 701.7(a)(1), and provided a fourteen day time limit. *See Tackman v. Goord*, 2005 U.S. Dist. LEXIS 42654, *51 (W.D.N.Y. Sept. 26, 2005)(citing regulations). The regulations have been amended to allow inmates twenty-one (21) calender days from an alleged occurrence within which to file a grievance, and the deadline appears in section 701.5. N.Y. CIV. PRAC. L. & R., tit.7, § 701.5(a)(1). *See also Winston v. Dodge*, 07 Civ. 1805, 2008 U.S. Dist. LEXIS 60966, *8-9 n.2 (S.D.N.Y. Aug. 5, 2008)(citing new regulations with the 21 day limit).

8

NYCRR § 701.8.  Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.8(a).  The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. *Id.* § 701.8(b).  Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. *Id.* §§ 701.8(c); 701.8(d)(1)-(d)(3). An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. *Id.* § 701.8(h).

The Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir, 2004)).  The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

In this case, defendant argues that plaintiff has not exhausted his administrative remedies because although he wrote a letter to the Superintendent and the incident was thoroughly investigated and found to be unsubstantiated, plaintiff ***never*** brought a formal grievance, and therefore, did not properly complete the administrative

9

procedures that were available to him. Defendants have submitted the declaration of Dale Artus, the Superintendent of Clinton. Artus Decl. (Dkt. No. 32-4). Superintendent Artus states that shortly after the August 28, 2006 incident, he received a letter from plaintiff, complaining about the alleged assault. Artus Decl. ¶ 3 & Ex. 5 at pp.2-3.

Superintendent Artus states that the alleged incident was fully investigated "internally," statements were taken, plaintiff's photographs were taken, and plaintiff was interviewed. *Id.* ¶ 4. Sergeant J. Silver was the primary investigator, and he issued a report, substantiating the events described by defendant Allen. *Id.* ¶¶ 5-6 & Ex. 5 at p.7. Exhibit 5 contains the documents generated as a result of the investigation in addition to the disciplinary hearing documents, generated as a result of the misbehavior report issued by defendant Allen. Plaintiff refers to this letter as a "grievance" in his deposition. Deposition Transcript at p.31 (Dkt. No. 32-11). Defendants have submitted the declaration of Tara Brousseau, the Inmate Grievance Supervisor at Clinton, stating that plaintiff never filed a formal grievance regarding this incident. Brusseau Decl. ¶ 23. (Dkt. No. 32-5).

There is no indication that the administrative remedy procedure was not "available" to plaintiff. During his deposition, plaintiff stated that the "grievance" was investigated, and plaintiff's allegations were denied. (T. at 31). Plaintiff conceded, however, that he did not "appeal the grievance." *Id.* Plaintiff stated that he did not appeal because "[he] didn't know nothing [sic] about appealing a grievance."

*Id.* The question becomes whether plaintiff's letter[7] to Superintendent Artus and the subsequent investigation of the incident suffices for purposes of the exhaustion requirement.

In *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007), the Second Circuit discussed whether the plaintiff's filing of administrative tort claims as well as making informal complaints to prison officials satisfied the exhaustion requirement, notwithstanding plaintiff's failure to utilize the Bureau of Prisons's formal grievance procedure.[8] *Id.* at 42-44. The court held that although the filing of the administrative tort claims and the informal letters would serve to alert the prison officials to the nature of the plaintiff's claim and may have put them "on notice" of the plaintiff's concerns, after *Woodford*, "notice" is not enough. *Id.* at 44 (citing *Woodford*, 548 U.S. at 94-95). If the inmate does not comply with the "critical procedural rules," he will not have complied with the PLRA's exhaustion requirement. *Id.*

The court in *Macias* overruled its prior decision in *Branham v. Clancy*, 425 F.3d 177, 183 (2d Cir. 2005) to the extent that *Branham* might have provided support for an argument that the inmate will have exhausted his claims informally by

---

[7] The court notes that plaintiff wrote a variety of letters to various individuals, including Superintendent Artus; Inspector General; a New York State Assemblyman; and the Lieutenant Governor. Compl. Exhibit. The documents attached to the complaint also purport to include letters that plaintiff wrote to "Inmate Grievance" and the Central Office Review Committee, however, it is clear from the Brousseau Declaration that plaintiff did not file a proper grievance regarding this incident.

[8] Macias was a federal prisoner, raising his constitutional claims under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). As shown by *Macias*, the PLRA requirement applies equally to section 1983 claims and *Bivens* actions.

providing enough information about his grievance to take responsive measures. *Macias*, 495 F.3d at 43-44. The court in *Macias* distinguished "substantive" exhaustion and "procedural" exhaustion, holding that the inmate must do both. *Id.* at 43.

In this case, it is clear that although plaintiff raised his issues informally in a letter to the Superintendent, and obtained an investigation, plaintiff clearly did not utilize the formal grievance procedures. The various letters that plaintiff attaches to his complaint include a letter to the CORC, however, plaintiff cannot simply write to the CORC without proceeding by the proper administrative channels. Part of the problem with failing to file a grievance is that plaintiff did not have the opportunity to appeal the adverse finding of the Superintendent's investigation.

During the deposition, plaintiff testified that he did not file an appeal because he did not "know nothing [sic] about appealing a grievance." (T. at 31). His own letters, attached to the complaint show that he knew about "Inmate Grievance" and the CORC. Grievance Supervisor Brousseau states in her affidavit that Title 7 of the NYCRR is available at the Law Library at Clinton, and Directive No. 4040, containing the procedural rules of the grievance program is available in both the general library and the law library at Clinton. Brousseau Aff. ¶ 9. Grievance Supervisor Brousseau also states that the plaintiff's records from 2006 show that he was familiar with the grievance process because he filed two grievances, dealing with matters unrelated to the present complaint. *Id.* ¶ 23. Plaintiff has not contested this sworn statement.

Plaintiff does not, and cannot, claim that the defendant's actions prevented

plaintiff from using the administrative procedure, and there are no "special circumstances" that would justify plaintiff's failure to do so. Thus, plaintiff has failed to exhaust his administrative remedies, and the complaint may be dismissed on that basis.

**4.     The "Three Strikes" Provision of the PLRA**

Although defense counsel did not raise this argument, the court feels compelled to raise this issue *sua sponte*. In addition to the exhaustion requirement, the PLRA contains a provision that prohibits the filing of an action *in forma pauperis* when the plaintiff has had actions dismissed on at least three prior occasions, either for failure to state a claim or for frivolousness. 28 U.S.C. § 1915(g). Section 1915(g) provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [in forma pauperis] if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The Second Circuit has held that the three strikes provision applies to cases that were dismissed for failure to state a claim or for frivolousness even prior to the enactment of section 1915(g). *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir. 2000). The court in *Welch* cited cases, holding that section 1915(g) and this interpretation were valid because the provision does not ***prevent*** an individual from bringing an action,

13

but merely affects the ability to file the action ***in forma pauperis***. *Id.* (citations omitted). The court also notes, however, that a dismissal can be pursuant to section 1915(g) even if the court originally granted plaintiff *in forma pauperis* status. *See McFadden v. Parpan*, 16 F. Supp. 2d 246, 247 (E.D.N.Y. 1998)(dismissing under section 1915(g) and finding that *in forma pauperis* status was "improvidently granted").

If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent action *in forma pauperis* unless the plaintiff is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). The "imminent danger" exception to section 1915(g) has been interpreted to apply only if the plaintiff is imminent danger of serious physical injury "when he files his complaint." *Pettus v. Morgenthau*, 544 F.3d 293, 296 (2d Cir. 2009)(citing *inter alia Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002)). There must also be a nexus between the "imminent danger" and the legal claims asserted in the complaint that he wishes to file. *Id.* at 297.

Plaintiff in this case has had his IFP status revoked ***twice in this district alone*** for having accumulated "three strikes." *See Gamble v. Maynard*, 9:06-CV-1543 (N.D.N.Y. Jan. 14, 2008)(adopting Report-Recommendation of Nov. 5, 2007) (DHN/DEP); *Gamble v. Monette*, 9:06-CV-136 (N.D.N.Y. July 20, 2007)(adopting Report-Recommendation of May 25, 2007)(LEK/GJD). Plaintiff has filed ten cases in the Northern District, nine of which are now closed, and most of those have been

closed either for frivolousness or failure to state a claim.[9] This is the only case that plaintiff still has "pending" in this district. The court would point out that in his various form complaints, he often neglects or intentionally fails to state that he has other cases pending, and when he does indicate that he has cases pending, he never lists all of them.

Plaintiff often brings two of the same cases, naming the same defendants. In dismissing *Gamble v. Kelsh*, 9:07-CV-474, Senior District Judge Thomas J. McAvoy noted that plaintiff had previously brought the same allegations against the same defendants in a prior case that was dismissed for failure to state a claim. (Dkt. No. 4 at p.3)(citing *Gamble v. Kelsh*, 9:07-CV-93). Senior Judge McAvoy warned plaintiff that bringing identical successive actions is "inappropriate and sanctionable." *Id.* at p.4.

Plaintiff has continued his abusive behavior in the Western District of New York. In fact, currently there is a motion to dismiss pending in *Gamble v. Felker, et al*, 6:07-CV-6458 (W.D.N.Y.), in which plaintiff has apparently brought the same

---

[9] Plaintiff has also filed: *Gamble v. Loran* 9:05-CV-1088 (dismissed *sua sponte* for failure to state a claim)(LEK/RFT); *Gamble v. Cox*, 9:05-CV-1093 (dismissed *sua sponte* for failure to state a claim)(FJS/RFT); *Gamble v. Monette*, 9:05-CV-1095 (dismissed *sua sponte* for failure to state a claim)(DNH/GJD); *Gamble v. Kelsh et al.,* 9:07-CV-93 (LEK/GJD) (dismissed *sua sponte* for failure to state a claim); *Gamble v. Kelsh, et al.,* 9:07-CV-474 (TJM/RFT) (dismissed for failure to state a claim and for frivolousness). One of the cases was transferred to another district. *Gamble v. Isaacs,* 9:05-CV-1097 (transferred to WDNY). Plaintiff also filed *Gamble v. Monette, et al.,* 9:06-CV-979 (FJS/RFT)(filed mistakenly as a separate action, but closed and ordered to be re-filed as an amended complaint in this action (9:06-CV-136). The court understands that the strikes must occur prior to the filing of the complaint. The court mentions the newer cases only to show that plaintiff continues to attempt to manipulate the system.

15

claims against defendant Allen as well as the defendants in *Gamble v. Maynard*, 9:06-CV-1543, defendants Silver, Babbie, Maynard, and Donah. The claims are based on the identical conduct that is alleged in the two cases in the Northern District of New York. Defense counsel in the Western District has argued that plaintiff can not pursue these actions for an improper purpose to harass the defendants. *Gamble v. Felker*, 6:07-CV-6458 (W.D.N.Y.)(Dkt. No. 20 at p.2).

Plaintiff also filed *Gamble v. Robyck, et al.*, 6:07-CV-6498 in the Western District of New York. On January 7, 2008, District Judge Richard Arcara issued a conditional order of dismissal, directing plaintiff to file an amended complaint because the original did not state a claim. *Id.* (Dkt. No. 3). On March 5, 2008, plaintiff requested an extension of time to do so, but the docket sheet indicates that as of this date, plaintiff has failed to file an amended complaint in compliance with the court's order. Although *Gamble v. Robyck* is not closed, the court finds that plaintiff continues to abuse the system with his behavior.

Although defense counsel in this case has inexplicably failed to raise this issue, this court cannot ignore plaintiff's abusive litigation, and cannot ignore this court's own finding that plaintiff has three strikes and should not be allowed to bring actions *in forma pauperis*. Thus, even if plaintiff had exhausted his administrative remedies, this court would still recommend dismissal of the action and revocation of plaintiff's IFP status.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED,** that defendant's motion for summary judgment (Dkt. No.

32) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**, and it is

**RECOMMENDED**, that plaintiff's IFP status be ***REVOKED*** pursuant to 28 U.S.C. § 1915(g).[10]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 20, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

---

[10] The court notes that since the court is recommending dismissal based on failure to exhaust, if the court adopts the recommendation, there is no need to revoke plaintiff's IFP status. However, the court has included the recommendation regarding IFP for purposes of the plaintiff's future filings, if any, and if the court should determine that it does not agree with the exhaustion determination. Generally, if the court revokes plaintiff's IFP status, without more, the plaintiff is given the opportunity to pursue the action if he pays the entire filing fee.